*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL LEE RAE, | ) | |
| | ) | Supreme Court No. S-16006 |
| Appellant, | ) | |
| | ) | Superior Court No. 3SW-15-00003 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | No. 7209 – October 27, 2017 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Seward, Carl Bauman, Judge.

Appearances: Michael Lee Rae, pro se, Anchorage, Appellant. Matthias Cicotte, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A prisoner filed a complaint against the Department of Corrections alleging that he was held illegally and demanding his release. The superior court dismissed the complaint for failing to state a claim upon which relief could be granted. The prisoner

appeals.  Because we agree that the complaint failed to state a cognizable claim, we affirm the dismissal.

## II.   FACTS AND PROCEEDINGS

Michael Rae is a prisoner in the custody of Alaska's Department of Corrections (DOC).  In January 2015 he filed a complaint (labeled a "petition") in the superior court alleging that DOC lacked the constitutional authority to hold him.  In an attached motion for expedited consideration he asserted that he had been "subjected to numerous forms of cruel and unusual punishments" including solitary confinement and impediments to his ability to conduct legal research.

In June 2015 the superior court sua sponte dismissed the complaint with prejudice because Rae failed to "advance any cognizable or discernable claim."  Rae filed both a motion for reconsideration and a notice of his intent to seek a default, following up with a 75-page application for a default judgment.  The superior court denied reconsideration, concluding that "Rae's main point of contention is that [DOC] has no legal authority to hold him or exist at all" and that the "argument is without merit and the relief sought is not available to Rae."

Rae appeals.

## III.   STANDARDS OF REVIEW

"We review a motion to dismiss de novo, construing the complaint liberally and accepting as true all factual allegations."[1]  We "exercise our independent judgment in interpreting court rules,"[2] and we review questions of constitutional law and statutory

---

[1]     *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012) (citing *Caudle v. Mendel*, 994 P.2d 372, 374 (Alaska 1999)).

[2]     *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026
(continued...)

**7209**

-2-

interpretation de novo.[3]  But we "review the adequacy of the superior court's assistance to a pro se litigant for abuse of discretion."[4]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err When It Dismissed Rae's Complaint For Failure To State A Claim.

A "complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim' that would entitle him to some form of relief, even if the plaintiff requests a type of relief he is not entitled to obtain."[5]  This stringent standard for dismissal was met in this case.

Rae's complaint posed five "question[s]of law."  First, Rae asked whether DOC is covered by the Alaska Administrative Procedure Act, to which he provided the answer:  "No."  Second, he asked the court to clarify whether DOC's creation by executive order was constitutional.  Third, he asked whether DOC's creation by executive order violated the separation of powers doctrine, to which he answered "yes."  Fourth, Rae asserted that all the laws and regulations authorizing DOC's custody over him were "ex post facto."  His last question appears to be an amalgam of the first four:  He concludes that his detention by DOC violates the constitution, the separation of powers doctrine, and generally "the rights provided by 'we' the people."  The answers to none of these "questions of law" depended on the resolution of disputed issues of fact.

---

   [2](...continued)
(Alaska 2009).

   [3]      *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 65 (Alaska 2001).

   [4]      *Sarah D. v. John D.*, 352 P.3d 419, 428 n.24 (Alaska 2015).

   [5]      *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 6 (Alaska 2012) (quoting *Guerrero v. Alaska Hous. Fin. Corp*, 6 P.3d 250, 254 (Alaska 2000)).

**7209**

And the superior court could, and did, properly determine that the answers to them would not provide Rae the relief he wanted: his immediate release from DOC custody.

Rae argues on appeal that AS 33.30.051 and other statutory provisions regarding prisoners in DOC custody are unconstitutional "ex post facto" laws.[6] This argument fails for at least two reasons. First, the statutes Rae cites do not define any criminal conduct,[7] and second, they were enacted well before Rae committed the offenses for which he was imprisoned.[8] Rae also relies on AS 09.50.310, allowing the attorney general to bring an action against a person or persons for unlawfully usurping a public office. But the statute cannot reasonably be construed to authorize a suit against the existence of an entire state agency; besides, it does not purport to grant a private cause of action.

We find no merit in any of Rae's other arguments questioning the validity of DOC's existence. Rae cites the fact that DOC is not covered by the Alaska Administrative Procedures Act, but he does not explain why having different procedural

---

[6]   *See Doe v. State*, 189 P.3d 999, 1003 (Alaska 2008) (explaining that provisions of the Alaska and United States Constitutions "bar the legislature from enacting any law that 'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed.' " (quoting *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991))).

[7]   AS 33.30.051(a) states in full: "A person convicted of an offense against the state shall be committed to the custody of the commissioner for the term of imprisonment that the court directs." *See also* AS 33.30.011 (outlining duties of DOC commissioner); AS 33.30.021 (authorizing DOC to adopt regulations); AS 33.30.031 (authorizing DOC to delegate to private prison contractors).

[8]   *See* ch. 88, § 6, SLA 1986 (also adding AS 33.30.011, .021, and .031).

rules makes DOC an illegal entity.[9]  He points to the criminal-administration provisions of the Territorial Organic Act and Statehood Act and claims that they preclude later changes in the law like the creation of DOC, and he argues that article I, section 12 of the Alaska Constitution lays out a specific plan for "criminal administration" that also conflicts with DOC's creation.  But article I, section 12 provides broad goals for criminal administration; it does not purport to mandate the minutiae of its execution.[10]  And the Constitution itself, in article III, section 23, clearly empowers the executive to adjust the organization of its agencies.[11]

---

[9]      *Cf. Dep't of Corr. v. Kraus*, 759 P.2d 539, 540 & n.2 (Alaska 1988) (reviewing prison disciplinary proceedings even though "[i]t is clear that review of prison disciplinary proceedings is not covered by the Alaska Administrative Procedure Act").

[10]      Article I, section 12 of the Alaska Constitution provides in full:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Criminal administration shall be based upon the following: the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation.

[11]      Article III, section 23 of the Alaska Constitution states, in part:  "The governor may make changes in the organization of the executive branch or in the assignment of functions among its units which he considers necessary for efficient administration.  Where these changes require the force of law, they shall be set forth in executive orders."

*See* AS 24.08.210 (stating that "[a]n executive order proposing a change in the executive branch and requiring the force of law under art[icle] III, [section] 23" must be presented to both houses of the legislature, and will become effective "[u]nless disapproved by a special concurrent resolution introduced in either house, concurred in by a majority of the members in joint session").

The superior court was correct to decide that Rae, in posing his five "questions of law" that could be readily answered in DOC's favor, failed to state a claim on which relief could be granted.

## B. The Court Did Not Err Procedurally.

Rae argues that the superior court erred procedurally when it dismissed the complaint. First, he appears to argue that the language of Alaska Civil Rule 7(a) — "[t]here shall be a complaint and an answer" — means that an action cannot be dismissed before an answer is filed. But Alaska Civil Rule 12(b) expressly allows a defendant to short-cut the process by moving to dismiss before filing an answer. And while a court should be very hesitant to dismiss a case on its own motion before the answer is filed, we have never held that a sua sponte dismissal is impermissible where it is obvious the complaint is fatally deficient.

Rae also faults the superior court for failing to cite case law, statutes, or regulations when it dismissed his complaint. But findings are not required for dismissal orders, as they are for rulings following a bench trial or deciding a motion for injunctive relief.[12] And because we review dismissal orders de novo,[13] we are not reliant on the superior court's rationale, as we often are when reviewing discretionary or fact-based decisions.[14]

---

[12] Alaska R. Civ. P. 52(a).

[13] *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012).

[14] *See, e.g.*, *Crittell v. Bingo*, 36 P.3d 634, 639 (Alaska 2001) ("The core purpose of the rule [requiring superior court to find facts specifically in bench trial], then, is to enable the appellate court to conduct a meaningful review of the trial court's decision-making process.").

Rae appears to argue that DOC's failure to file an answer entitled him to a default judgment. The court dismissed the case on June 1, 2015. Rae filed his "intent" to file a default judgment on June 8 and the actual application several weeks later. There can be no right to a default judgment after the case has been properly dismissed.[15]

## C. Dismissal Did Not Violate Rae's Right To A Jury Trial Or His Right To Petition The Government.

Rae asserts that the court violated his right to a trial. The right depends on the existence of a factual issue to be decided by a trier of fact. When the superior court properly concluded, as a matter of law, that Rae's complaint failed to state a claim for relief under Civil Rule 12(b)(6), nothing remained to be tried. The court did not violate Rae's right to a trial.[16]

Rae also asserts a violation of his right to petition the government for a redress of grievances, but that right is concerned with a person's access to the

---

[15]    Moreover, under Alaska Civil Rule 55(g) "[n]o default judgment shall be entered against the state or an officer or agency thereof unless the claimant establishes the claim or right to relief by evidence satisfactory to the court." Given that the court dismissed the complaint for failure to state a claim, Rae's complaint certainly failed to provide such satisfactory evidence.

[16]    *See Foondle v. O'Brien*, 346 P.3d 970, 976 n.36 (Alaska 2015) ("We have held that the summary judgment standard, limiting summary disposition to cases in which there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, 'is adequate to prevent the violation of a party's due process right or right to a jury trial,' and the same is true of the standards for dismissal if properly applied." (quoting *Capolicchio v. Levy*, 194 P.3d 373, 380-81 (Alaska 2008))); *see also Smith v. Kitchen*, 156 F.3d 1025, 1029 (10th Cir. 1997) ("The district court's dismissal of Smith's complaint under [federal] Rule 12(b)(6) did not violate Smith's right to a jury trial under the Seventh Amendment: When Smith failed to plead any facts that would overcome the defendants' complete defenses, there were no facts to be 'tried' by a jury.").

courthouse; what comes afterwards is more properly analyzed for its compliance with due process.[17] And "the standards for dismissal if properly applied" are "adequate to prevent the violation of a party's due process right."[18] In sum, we see no violation of Rae's constitutional rights in the superior court's dismissal of his complaint.[19]

**D.    The Superior Court Did Not Abuse Its Discretion By Failing To Provide Substantive Legal Assistance To Rae.**

Finally, Rae asserts that the superior court erred when it dismissed his complaint because, as a self-represented litigant, his burden of complying with the usual procedural rules was "relaxed" and because the court should have advised him of defects in his complaint before dismissing the action sua sponte. We disagree.

It is well established that "[t]he pleadings of pro se litigants 'should be held to less stringent standards than those of lawyers.' "[20] As we noted in *Breck*, "the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[21] But judges must be careful to maintain their

---

[17]    Carol Rice Andrews, *A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right*, 60 OHIO ST. L.J. 557, 646–47 (1999) ("The Petition Clause . . . protects the initial filing of the complaint, and the Due Process Clause, and its somewhat lower 'reasonableness' standard of protection, steps in from that point forward." (footnotes and citations omitted)).

[18]    *Foondle*, 346 P.3d at 976 n.36.

[19]    Rae also argues that he was denied "equal treatment and protections of [the] laws," but he fails to expand on this argument.

[20]    *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 308-09 (Alaska 2007) (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

[21]    *Breck*, 745 P.2d at 75.

impartiality; they therefore may not act as advocates for pro se litigants on substantive legal issues.[22]

Here, the superior court observed that Rae's complaint "consists primarily of incoherent citations to cases, administrative code provisions, executive orders, treaties, statutes, the Uniform Commercial Code, and other legal authorities and sources." The court found that "[t]he only decipherable portions are allegations that the Department of Corrections is an illegal entity without authority to hold Rae," which as a claim for relief was "without merit."

What Rae needed to correct these obvious deficiencies was not procedural advice. He filed a complaint which — though mislabeled as a petition — presented the questions he wanted the court to decide, and the court accepted the filing as a complaint and considered the claims on their merits. Even if Rae could have benefited from advice on how to shape his grievances into cognizable legal claims that would survive dismissal — which we doubt[23] — that is not help the court could give; it would have crossed the

---

[22] *McLaren v. McLaren*, 268 P.3d 323, 334 (Alaska 2012) ("Requiring the superior court to inform pro se litigants of all the relevant substantive law would put a trial judge in the precarious position of acting as attorney for an unrepresented party, which is exactly what we [have] sought to avoid . . . ."); *Tracy v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 279 P.3d 613, 617 n.14 (Alaska 2012) ("[R]equiring a judge 'to instruct a pro se litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side.' " (quoting *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989))).

[23] Given the baselessness of Rae's central claim — that DOC is an illegal entity without the authority to hold him — we do not see that any amount of substantive amendment could have saved Rae's complaint from dismissal. *See Tracy*, 279 P.3d at 618 (holding that the superior court did not abuse its discretion by not "advising the

(continued...)

**7209**

line between procedural assistance and substantive legal advice, and it would have cast the judge as Rae's advocate.[24]

We conclude that the superior court did not abuse its discretion in failing to give Rae advice on how to avoid the dismissal of his complaint.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[23](...continued) [litigants] that they might amend" where the claim would still be dismissed after any potential amendment).

[24]    We note that Rae does allege restrictions on his law library access, the seizure of his legal papers, and unlawful punitive segregation.  But as best we can tell from his briefing, these allegations are provided only as background for the "questions of law" he asked the superior court to answer — all having to do with the legality of DOC's existence.  To the extent claims were not readily discernible from Rae's complaint, the superior court was not required to consider them.  *See Rathke*, 153 P.3d at 309 ("[W]here the essence of a pro se litigant's argument is 'easily discerned' from his briefs, the trial court should consider the pro se litigant's argument, provided that the applicable law is well established and the opposing party would not be prejudiced by the court's consideration of the issue." (quoting *Wilkerson v. State, Dep't of Health & Social Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1022 (Alaska 1999))).

**7209**