NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| CIM JOEL BLAIR, | ) | |
| | ) | Supreme Court No. S-17434 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-18-00743 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF CORRECTIONS, | ) | |
| | ) | No. 1804 – December 2, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Cim Joel Blair, pro se, Kenai, Appellant. Matthias R. Cicotte, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Maassen, and Carney, Justices. [Winfree and Stowers, Justices, not participating.]

## I.     INTRODUCTION

A prisoner in the custody of the Alaska Department of Corrections (DOC) appeals the superior court's dismissal of his case. The prisoner sued DOC after its employees confiscated legal documents related to his criminal case and cited the prisoner with a disciplinary infraction. The prisoner's complaint sought both compensatory

---

\*      Entered under Alaska Appellate Rule 214.

damages and injunctive relief. The superior court granted DOC's motion to dismiss, accepting its arguments that the prisoner failed to state a cognizable claim for damages and that his claims for injunctive relief were barred by his failure to exhaust administrative remedies.

We conclude that the superior court did not err, with one exception: the dismissal of Blair's claims for injunctive relief should have been without prejudice. We therefore remand the case for entry of a revised dismissal order and otherwise affirm the decision of the superior court.

## II.    FACTS AND PROCEEDINGS

Cim Joel Blair is a prisoner in DOC custody and is self-represented in this case. In 2018 he filed a complaint against DOC and its commissioner in superior court. He alleged that he learned while in prison that a witness who had been subpoenaed for his criminal trial, but whom the State had been unable to locate, was housed in the same facility. Blair alleged that the witness had information helpful to Blair's defense and had told Blair he was willing to testify. Blair alleged that he asked the witness to contact the court and gave him two stamped envelopes, a "legal copies" request form, the original subpoena, and a "completed, unsigned averment" of their conversation about the witness's willingness to testify. Blair's complaint emphasized that in performing these acts he was "acting as a pro-se [litigant] in his own defense in his criminal case."

But a correctional officer seized the documents and mailing materials from the witness. According to Blair's complaint, "[n]o effort, official or informal, was initiated to determine the [materials'] nature," and they were not returned to him. DOC cited Blair with a disciplinary infraction for "giving or receiving property," and he was found guilty at a disciplinary hearing. According to Blair's complaint, the witness was moved "out of system," and Blair lost his job as a prison librarian after DOC used threats of job loss and disciplinary sanctions to try to coerce him into confessing wrongdoing.

Blair further alleged that he filed an "emergency grievance to [DOC] for return of [his] legal documents," but it was denied by the facility standards officer. Blair also complained to the assistant superintendent, who refused to order the materials' return. Blair next sent a letter to the DOC commissioner describing the incident in detail. His complaint alleges that he separately appealed the disciplinary infraction but the appeal was denied.

Blair's complaint grouped DOC's alleged illegal acts into six general categories. The first was "[n]on-feasance" for "failing to properly investigate or examine the [seized] court documents," thus "fail[ing] to identify the critical connections between [Blair] and [the witness] during [Blair]'s court proceedings." He alleged that the non-feasance "compromised [the] legal proceedings" in his criminal case.

The second category of illegal acts was "[m]alfeasance" for "attempt[ing] to coerce information" from Blair and breaching ethical and professional duties by failing to return his legal documents, "effectively frustrat[ing] [Blair]'s efforts to recover the documents and potential[ly] exculpatory testimony." Blair claimed these actions "compromised [his] legal proceedings."

The third category of alleged DOC illegality was "[w]itness [t]ampering" in violation of criminal statute AS 11.56.540(a)(1) and (2),[1] by interfering with Blair's investigation of exculpatory witnesses, failing to give him the documents taken from the witness, and engaging in conduct that "eliminated the possibility of [the witness's] testimony from being presented to the Court." The fourth category was "[o]bstruction of [p]rocess . . . by using administrative delays and obfuscation [to] obstruct [Blair]'s

---

[1] AS 11.56.540(a)(2) ("A person commits the crime of tampering with a witness in the first degree if the person knowingly induces or attempts to induce a witness to . . . be absent from a judicial proceeding to which the witness has been summoned.").

rightful exercise of his investigative activities when representing himself in his criminal case." Blair argued that this hindered his ability to "present such critical testimony before the Judge" in his criminal case.

The fifth category of alleged DOC illegality was "[i]nterfering with [o]fficial [p]roceedings" in violation of criminal statute AS 11.56.510, by directly obstructing Blair's defense in his criminal case. The sixth and last category alleged violations of his right to access the courts, based on both the constitution and criminal statute AS 11.76.110,[2] and of his due process right to present a defense in his criminal case without interference.

Blair asked for $121,500 — later amended to $195,000 — in compensatory damages for his claims of witness tampering, interfering with official proceedings, and violation of his constitutional right of access to the courts. He also requested injunctive relief from (1) DOC's "continued interference" with his due process rights and access to the courts, witnesses, and evidence and (2) all administrative consequences of the document seizure and the resulting disciplinary hearing.

DOC moved to dismiss, arguing that Blair failed to state a claim for which damages could be granted and that any claims for injunctive relief were barred by Blair's failure to exhaust his administrative remedies. The court dismissed the case with prejudice "for the reasons set forth in the motion." Blair appeals.

III. **STANDARD OF REVIEW**

"We review a motion to dismiss de novo, construing the complaint liberally

---

[2]     Blair's complaint cites AS 11.56.110, which defines the crime of "[r]eceiving a bribe." We assume Blair intended to cite AS 11.76.110, which defines the crime of "[i]nterference with constitutional rights."

and accepting as true all factual allegations."[3]  "Because motions to dismiss are disfavored, '[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief.' "[4]  "Pleadings of pro se litigants are held to less stringent standards than those of lawyers."[5]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err In Dismissing Blair's Damages Claims.

Blair requested money damages for three of his claims: witness tampering, interfering with official proceedings, and violation of his constitutional right of access to the courts.  DOC argued in its motion to dismiss that "Blair's claims do not correspond to any cognizable tort claim" and "sound[] in constitutional law rather than tort law."  DOC noted that damages are not permitted for private suits against the State based on violations of the Alaska Constitution.  In dismissing the case the superior court accepted DOC's argument.

The State has waived its sovereign immunity in some contexts;[6] AS 09.50.250 provides that "contract, quasi-contract or tort claim[s]" may be brought against the State.  This waiver has limits, however; tort claims may not be brought for

---

[3]    *Rae v. State, Dep't of Corr.*, 407 P.3d 474, 477 (Alaska 2017) (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

[4]    *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009) (quoting *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 722 (Alaska 2006)).

[5]    *Id.*

[6]    *See* Alaska Const. art. II, § 21 ("The legislature shall establish procedures for suits against the State."); AS 09.50.250 (stating that contract, quasi-contract, or tort claims may be brought against the State unless one of five exceptions applies).

actions that fall within the "discretionary function" exception.[7]  And in cases of alleged constitutional violations, "we will not allow a constitutional claim for damages, 'except in cases of flagrant constitutional violations where little or no alternative remedies are available.' "[8]  Alternative remedies include federal ones, such as claims under 42 U.S.C. § 1983.[9]  We have held that a § 1983 claim may be considered an "alternative remedy" even if it is likely to be barred by defenses.[10]

Blair disputes that his claims are "predicated on Constitutional violations." He argues that his damage claims are tort-based and fall outside the discretionary function exception to liability because they "arise[] from Correctional officer[] and Administration breaches of statutory law and non-discretionary facility procedures." He argues that DOC intentionally violated "non-discretionary" law and procedural rules.

We agree with DOC, however, that Blair's damages claims are constitutionally based.  His complaint alleges that his "access to the courts and due process was violated," and he bases his request for damages on "witness tampering," "interfering with official proceedings," and "violation of the constitutional right to access to the courts."  At their core, all three claims allege interference with Blair's due process rights and his ability to fairly present his defense in his criminal case.

---

[7]  AS 09.50.250(1) (prohibiting damages claims for tort claims when the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state").

[8]  *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005) (quoting *Dick Fischer Dev. No. 2 v. State, Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992)).

[9]  *See State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1096-97 (Alaska 2012).

[10]  *Id.* at 1097 ("[I]t does not matter if the resolution of the certification issue will ultimately bar the alternative remedy; the fact that an alternative remedy once existed is enough to bar a *Bivens* action.").

And although Blair argues that his claims constitute torts, they are not based on torts we recognize. As DOC noted in its motion to dismiss, Blair's damages claims — "witness tampering," "[i]nterference with official proceedings," and "[v]iolation of [c]onstitutional [r]ights; [a]ccess to the [c]ourt" — are based on criminal statutes.[11] We have held that violation of the constitutional right to access the court, as reflected in criminal statute AS 11.76.110, does not give rise to a private right of action,[12] and we have never recognized a civil cause of action for witness tampering under AS 11.56.540(a)(2) or interfering with official proceedings under AS 11.56.510.[13]

Once Blair's claims are properly characterized as constitutional in nature, it follows that he cannot sue DOC for damages because he has an alternative remedy: he could assert a § 1983 claim against DOC employees in their individual capacities.[14]

---

[11] *See* AS 11.56.540(a)(2) ("A person commits the crime of tampering with a witness in the first degree if the person knowingly induces or attempts to induce a witness to . . . be absent from a judicial proceeding to which the witness has been summoned."); AS 11.56.510 (defining the crime of "[i]nterference with official proceedings"); AS 11.76.110 (defining the crime of "[i]nterference with constitutional rights").

[12] *See DeRemer v. Turnbull*, 453 P.3d 193, 198-99 (Alaska 2019); *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1015 (Alaska 1999) ("Thus, Alaska's criminal statute prohibiting interference with a constitutional right, AS 11.76.110, does not itself imply a purely private cause of action.").

[13] We do not address here Blair's ability to raise issues of alleged State wrongdoing in the course of his criminal case.

[14] "Only individual officials, and not the State, can be liable in damages under § 1983." *Brady v. State*, 965 P.2d 1, 20 n.72 (Alaska 1998); *see also Tracy v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 279 P.3d 613, 618 (Alaska 2012) (noting that "individuals acting in their official capacity are immune from suit under § 1983").

We do not need to reach the issue of whether the alleged violation was "flagrant."[15] Because Blair failed to state a claim that could result in the recovery of money damages, the court did not err in dismissing his claims for alleged torts or constitutional violations.[16]

**B.**     **The Superior Court Did Not Err By Dismissing Blair's Two Injunctive Claims, But They Should Have Been Dismissed Without Prejudice.**

Blair's complaint requested not only damages but also injunctive relief (1) from DOC's continued interference with his access to the courts and (2) "against the consequences of standing against correction officials," including the consequences of the disciplinary infraction. The superior court dismissed these claims because of Blair's failure to exhaust his administrative remedies.[17]

---

[15]     *See Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005).

[16]     Blair makes two procedural arguments which do not merit extended discussion. First, he argues that DOC's motion to dismiss was untimely because it was filed more than 40 days after he filed his complaint. But he did not raise this issue in the superior court, and we consider it waived. *See Forshee v. Forshee*, 145 P.3d 492, 500 n.35 (Alaska 2006) ("Notwithstanding the leeway given to pro se litigants, the requirement that an issue be preserved by being presented in the superior court arises out of notions of judicial finality and efficiency as well as fairness to the opposing party." (quoting *Pieper v. Musarra*, 956 P.2d 444, 446 (Alaska 1998))). Second, Blair argues that the superior court erred by granting DOC's motion to dismiss "for the reasons set forth in the motion." He argues that without more explanation it is impossible to tell which of DOC's arguments the superior court accepted. "But findings are not required for dismissal orders . . . . And because we review dismissal orders de novo, we are not reliant on the superior court's rationale, as we often are when reviewing discretionary or fact-based decisions." *Rae v. State, Dep't of Corr.*, 407 P.3d 474, 478 (Alaska 2017) (citations omitted).

[17]     *See Broeckel v. State, Dep't of Corr.*, 941 P.2d 893, 896 (Alaska 1997) (holding that exhaustion requirement generally applies to prisoner grievances).

Blair's first claim for injunctive relief alleges DOC's interference with his access to the courts. He claimed in the superior court that he exhausted his administrative remedies by (1) filing an emergency grievance for the return of his legal documents, which was deemed not an emergency and denied, and (2) sending a letter to the DOC Commissioner describing the incident. But the DOC grievance process has other steps which Blair did not pursue, including a right to appeal the denial of his grievance.[18] And on appeal Blair does not argue that he exhausted all administrative remedies, and we see no indication in the record that he should be excused from doing so.

Blair's second claim for injunctive relief seeks reversal of the consequences of his disciplinary hearing. He has conceded, however — both here and in the superior court — that he "never appealed the disciplinary sanction prior to" the superior court's dismissal of his case on exhaustion grounds. Further, he has repeatedly asserted that he is not using this civil suit as an appeal of the disciplinary sanction,[19] even while effectively asking the courts to reverse the infraction finding and its consequences. Blair is plainly asking for relief from an administrative decision which he has not appealed through the available process.

---

[18] There is a two-part process for a prisoner to appeal a grievance. ALASKA DEP'T OF CORR. POLICIES & PROCEDURES 808.03 § VII(D)(2)(f) (2006), https://doc.alaska.gov/pnp/pdf/808.03.pdf. If an emergency grievance is deemed not an emergency, it is treated as a non-emergency grievance and subject to the ordinary administrative process. *See id.*

[19] Blair states that this case "is not about the loss of an institutional job that pays pennies per hour" or "a disciplinary hearing over a minor institutional infraction." (Emphasis in original.) At oral argument he reiterated that he is "not appealing the disciplinary hearing" or the disciplinary "write-up."

However, it is premature to say that Blair cannot or will not exhaust his administrative remedies if he attempts them. His claims for injunctive relief therefore should have been dismissed without prejudice to his right to bring them again should he satisfy the statutory preconditions.[20] Though we affirm the superior court's dismissal of Blair's injunctive claims on exhaustion grounds, the superior court must clarify on remand that the dismissal of these claims is without prejudice.

## V. CONCLUSION

We REMAND to the superior court with instructions to clarify that the injunctive claims are dismissed without prejudice, and we otherwise AFFIRM the superior court's judgment.

---

[20] *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice. Therefore . . . we remand to the district court with directions to vacate its dismissal only to clarify that this dismissal is without prejudice." (emphasis omitted) (citations omitted)); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) ("[T]here is no 'futility exception' to the [Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)] exhaustion requirement. [The appellant's] failure to plead exhaustion of all administrative remedies mandates dismissal of his claim without prejudice.").